RECORD NO. 22-2274

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

**DOROTHY BILLS,**
**Plaintiff-Appellant,**

v.

**WYNH EMP, LLC, an Ohio Corporation,**
**and LANETTE KUHNASH,**
**Defendants-Appellees.**

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

**OPENING BRIEF OF PLAINTIFF-**
**APPELLANT – DOROTHY BILLS**

**Walt Auvil**
**THE EMPLOYMENT LAW**
**  CENTER PLLC**
**1208 Market Street**
**Parkersburg, WV   26101**
**(304)  485-3058 – PH**
**auvil@theemploymentlaw**
**       center.com**

**Counsel for Appellant -**
**Dorothy Bills**

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. 22-2274          Caption: Dorothy Bills v. WVNH EMP, LLC, an Ohio corp; LANETTE KUHNASH

Pursuant to FRAP 26.1 and Local Rule 26.1,

Dorothy Bills
(name of party/amicus)


_____

 who is ____the Plaintiff-Appellant____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Walt Auvil _____    Date: _____12/28/2022_____

Counsel for: Plaintiff-Appellant _____

- 2 -

Print to PDF for Filing

## <u>TABLE OF CONTENTS</u>

**STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION** ....................................................... 4

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW** ............. 4

**STATEMENT OF THE CASE** .............................................................. 4

**STATEMENT OF THE FACTS** ............................................................ 5

**STANDARD OF REVIEW** ................................................................... 7

**SUMMARY OF THE ARGUMENT** ..................................................... 8

**ARGUMENT** ......................................................................................... 9

**CONCLUSION** ................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Anderson v. Liberty Lobby,* 477 U.S. 242, 252, 91 L. Ed. 2d 202,
106 S. Ct. 2505 (1986) .................................................................. 7

*Barefoot v. Sundale Nursing Home,*
193 W. Va. 475, 457 S.E.2d 152 (1995) ........................................ 10

*Berg v. LaCrosse Cooler Co.*, 612 F.2d 1041 (7th Cir. 1980) ..................... 9

*Brammer v. W.Va.H.R.Comm'n,*
183 W. Va. 108, 394 S.E.2d 340 (W.Va. 1990) .......................... 8

*Cooper v. Norfolk & W. Ry.*,
870 F. Supp. 1410, 1418 (S.D. W. Va. 1994) .............................. 8

*Conrad v. Ara Szabo*, 198 W. Va. 362, 480 S.E.2d 801 (1996) .................. 11

*Crawford v. Metro; Gov't of Nashville & Davidson Cty.*,
555 U.S. 271, 272, 129 S. Ct. 846, 849 (2009) ............................. 11, 14

*Drinkwater v. Union Carbide Corp.*, 904 F.2d 853 (3rd Cir. 1990) ............ 9

*E.E.O.C. v. Clay Printing Co.*, 955 F.2d 936, 944 (4th Cir. 1992). ............. 7

*Hanlon v. Chambers*, 195 W. Va. 99, 103, 464 S.E.2d 741, 745 (1995) ..... 10, 15, 16

*Henson v. Liggett Group, Inc.*, 61 F.3d 270 (4th Cir. 1995) ........................ 7

*Hilton v. Shin*, Civil Action No. 11-cv-02241-AW,
2012 U.S. Dist. LEXIS 60204, (D. Md. Apr. 30, 2012) .............................. 11, 14

*Holland v. Jefferson National Life Ins. Co.*,
883 F.2d 1307 (7th Cir. 1989) ...................................................... 9

*Jackson v. Kimel*, 992 F.2d 1318, 1322 (4th Cir. 1993) .............................. 7

*Kalany v. Campbell*, 220 W. Va. 50, 52, 640 S.E.2d 113, 115 (2006) ......... 15

*Learned v. City of Bellevue*, 860 F.2d 928 (9th Cir. 1988),
*cert. denied*, 489 U.S. 1079, 109 S. Ct. 1530, 103 L. Ed. 2d 835 (1989)..... 9

*Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993).......... 7

*Monteiro v. Poole Silver Co.*, 615 F.2d 4 (1st Cir. 1980)............................ 9

*Rucker v. Higher Educ. Aids Bd.*, 669 F.2d 1179 (7th Cir. 1982)............... 9

*State ex rel. State Human Rights Comm'n v. Logan-Mingo Area
Mental Health Agency, Inc.*, 174 W. Va. 711, 329 S.E.2d 77 (1985) .......... 10

*Shepherdstown V.F.D. v. West Virginia Human Rights Comm'n*,
172 W. Va. 627, 309 S.E.2d 342 (1983) ...................................................... 10

*Silver v. KCA, Inc.*, 586 F.2d 138 (9th Cir. 1978) ...................................... 9

*Tipton v. Canadian Imperial Bank of Commerce*,
872 F.2d 1491 (11th Cir.  1989).  ................................................................. 9

*Westmoreland Coal Co. v. W. Va. Human Rights Comm'n*,
181 W. Va. 368, 382 S.E.2d 562 (1989)....................................................... 10

*West Virginia Univ. v. Decker*, 191 W. Va. 567, 447 S.E.2d 259 (1994) .... 10

## **STATUTES**

West Virginia Human Rights Act

W. Va. Code § 5-11-1 et seq......................................................................... 4, 9, 15

W. Va. Code § 5-11-9(7) .............................................................................. 9, 10, 15

## **RULES**

Fed. R. Civ. P. 56(c)..................................................................................... 7

Federal Rule of Appellate Procedure 4(a)(1)(A) .......................................... 4

## STATEMENT OF SUBJECT MATTER AND

## APPELLATE JURISDICTION

This is an appeal from a final judgment of the United States District Court for the Southern District of West Virginia in a civil action, pursuant to W. VA. CODE § 5-11-1 et seq., relating to a wrongful termination. The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (Diversity and amount in controversy). This Court has jurisdiction over this appeal pursuant to 15 U.S.C. §1121 and 28 U.S.C. § 1291. The District Court entered its final order on December 1, 2022. Appellant Dorothy Bills timely filed her Notice of Appeal with the District Clerk on December 14, 2022, within the time allowed by Federal Rule of Appellate Procedure 4(a)(1)(A). JA330.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Did the District Court err by finding that the Appellant smacking a patient's hands away from groping her chest a second time is not protected activity?

## STATEMENT OF THE CASE

Appellant's claim against Appellees is a wrongful termination claim for violating the West Virginia Human Rights Act ("WVHRA") by terminating her for engaging in a protected activity. It is unclear when exactly Appellees terminated Appellant Dorothy Bills, although Appellees claim it to have been some time shortly

following July 18, 2019. After discovery, Appellees filed a Motion for Summary Judgment, which the Charleston Division of the United States District Court for the Southern District of West Virginia granted, dismissing Appellant's case. Appellant is appealing from that dismissal to this Court.

## STATEMENT OF THE FACTS

Appellee WVNH operates the Worthington Healthcare Center in Worthington, West Virginia ("Worthington"). Appellant began working for WVNH at Worthington as a Certified Nursing Assistant (CNA) in October 2018. At the times relevant to Appellant's claims, Appellee Kuhnash was the Director of Nursing at Worthington. Kuhnash has held that position since April of 2019. Kuhnash's duties as DON include overseeing Worthington's nurses, such as the Appellant. JA030.

During Appellant's employment, she was tasked with providing care for a sexually aggressive patient. JA115, JA120-121. While caring for the patient, the patient groped Appellant's breasts once, and Appellant remonstrated against him for it. JA122-123. The patient did so again after Appellant's initial remonstration, this time groping her both breasts and pubic region. JA123. Appellant smacked the patient's hands away from her body after the second groping. JA124-125. Appellant states that the patient did not react to this contact beyond ceasing his conduct. JA132. After smacking the patient's hands away, Appellant and another nurse continued

their duties with the patient, changing his diaper and washing him as usual. JA122-123.

After this interaction, Appellant was urged by her fellow nurse Anita Ash to write the interaction up in an incident report and submit it to their superiors, and Appellant did so. JA130. Appellees then reported the incident as abuse to the West Virginia Department of Health and Human Resources ("WVDHHR"). JA031. Kuhnash suspended the Appellant on July 19, 2019. JA032, 103. Kunhash states that she suspended Appellant "pending investigation." JA032. After investigating, on January 31, 2020, WVDHHR sent Appellant a letter telling her that they were ending their investigation with no finding of abuse. JA267. Despite having turned one of her nurses in to WVDHHR for allegedly abusing a patient, Kuhnash did not follow up to determine what the state's finding had been. JA031-032. Nor did Appellee's employee Misty Boggs, who Kuhnash identified as responsible for interfacing between Appellees and WVDHHR, make it known that Appellant was exonerated of abuse. JA031-032.

After WVDHHR made this finding, Appellant made inquiries with Worthington to determine when she would be permitted to return to work, but received no answer, nor was she informed that she had been terminated. JA160-161. Appellant only learned that Appellees considered her terminated after her filing of this lawsuit in February 2022. JA107-108, JA137. Appellees are unable to identify

who made the decision to terminate Appellant. JA052-053. The record is unclear as to when Appellant was terminated. Appellees state that they terminated Appellant verbally. JA049-051. Appellee states that the basis for this termination was Appellant's act of smacking the patient's hands away from groping her. JA051-053.

## STANDARD OF REVIEW

The Fourth Circuit's standards for evaluating both the granting of a motion for summary judgment, as well as the appeals regarding the granting of such motions appear in *Henson v. Liggett Group, Inc.*, 61 F.3d 270 (4th Cir. 1995).

> We review grants or denials of motions for summary judgment *de novo* on appeal. *Jackson v. Kimel*, 992 F.2d 1318, 1322 (4th Cir. 1993). If there is no genuine dispute as to a material fact, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An employer is entitled to summary judgment if the plaintiff fails to establish a prima facie case of discrimination or fails to raise a factual dispute regarding the employer's proffered reasons for the alleged discriminatory act. *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993); *E.E.O.C. v. Clay Printing Co.*, 955 F.2d 936, 944 (4th Cir. 1992).

> In *Clay Printing*, we noted that "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 943 (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

*Henson,* 61 F.3d 270.

> Similarly, a prima facie case for retaliation puts the burden on Plaintiff to prove: 1) engagement in protected activity; 2) that the employer knew of protected activity and took adverse employment action against Plaintiff; and 3) a causal relationship between the

protected activity and adverse employment action. *See e.g. Brammer v. W. Va. H.R. Comm'n,* 183 W. Va. 108, 394 S.E.2d 340 (W.Va. 1990).

*Cooper v. Norfolk & W. Ry.*, 870 F. Supp. 1410, 1418 (S.D. W. Va. 1994)**.**

## <u>SUMMARY OF THE ARGUMENT</u>

The District Court erred by finding that the Appellant smacking a patient's hands away from groping her was not protected activity. The WVHRA defines protected activity as opposition to a practice that the Plaintiff reasonably believes violates the provisions of the Act. The patient's repeated groping of the Appellant's breasts, even after she demanded that the touching stop, is activity violating provisions of the WVHRA.

The state found that the Appellant did not commit any type of abuse in her actions of swatting the patient's hand away from groping her. The patient was unharmed. The parties do not dispute these facts. The sole issue before this Court is whether a nurse can be legally terminated for physically preventing a patient from continuing to grope her breasts as the Appellant did, or if that termination is illegal retaliation for protected activity under the WVHRA.

# **ARGUMENT**

<u>Appellant swatting the patient's hands away while he was groping her was</u>

<u>protected activity</u>

In an action to redress an unlawful retaliatory discharge under the West Virginia Human Rights Act, W. Va. Code § 5-11-1 et seq., the burden is upon the complainant to prove by a preponderance of the evidence (1) that the complainant engaged in protected activity, (2) that complainant's employer is aware of the protected activities, (3) that complainant is subsequently discharged and absent other evidence tending to establish a retaliatory motivation, (4) that complainant's discharge followed his or her protected activities within such period of time that a court can infer retaliatory motivation . . .

Under W. Va. Code, 5-11-9(7)(C), protected opposition is that which challenges "any practices or acts forbidden under this [Act]." Although we have not previously had an occasion to apply that language, numerous courts have construed similar language in Section (7)(C)'s federal analogue, Title VII of the Civil Rights Act of 1964, § 704(b), 42 U.S.C. § 2000e-3(a). Some of those courts have held that opposition is protected if the plaintiff-employee had a good faith belief that the practice opposed violated the statute, *e.g.*, *Monteiro v. Poole Silver Co.*, 615 F.2d 4 (1st Cir. 1980), while others have used either an objective test, *e.g.*, *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853 (3rd Cir. 1990) (reasonable belief); *Berg v. LaCrosse Cooler Co.*, 612 F.2d 1041 (7th Cir. 1980) (reasonable belief); *Learned v. City of Bellevue*, 860 F.2d 928 (9th Cir. 1988), *cert. denied*, 489 U.S. 1079, 109 S. Ct. 1530, 103 L. Ed. 2d 835 (1989); or required both good faith and a reasonable belief in the illegality of the opposed practice. *Holland v. Jefferson National Life Ins. Co.*, 883 F.2d 1307 (7th Cir. 1989); *Rucker v. Higher Educ. Aids Bd.*, 669 F.2d 1179 (7th Cir. 1982); *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491 (11th Cir. 1989). Another and decidedly minority view would not protect opposition unless it opposed a practice that actually violated Title VII. *E.g.*, *Silver v. KCA, Inc.*, 586 F.2d 138 (9th Cir. 1978). *See generally* Barbara Schlei & Paul Grossman, Employment Discrimination Law 543-48 (2nd ed. 1983 & Cum. Supp. 223-24 (1989)).

We have repeatedly held that we will construe the Human Rights Act to coincide with the prevailing federal application of Title VII unless there are variations in the statutory language that call for divergent applications or there are some other compelling reasons justifying a different result. *E.g.*, *Barefoot v. Sundale Nursing Home*, 193 W. Va. at  , 457 S.E.2d at 159; *West Virginia Univ. v. Decker*, 191 W. Va. 567, 447 S.E.2d 259 (1994); *Westmoreland Coal Co. v. West Virginia Human Rights Comm'n*, *supra*; *State ex rel. State Human Rights Comm'n v. Logan-Mingo Area Mental Health Agency, Inc.*, 174 W. Va. 711, 329 S.E.2d 77 (1985); *Shepherdstown V.F.D. v. West Virginia Human Rights Comm'n*, 172 W. Va. 627, 309 S.E.2d 342 (1983). Our sense of the prevailing federal standard is that a plaintiff seeking relief under Section 704(a)'s Opposition Clause must show that his or her opposition concerned practices that he or she believed were violations of the statute.

We see neither a variation in language nor a good reason to diverge from that standard with regard to W. Va. Code, 5-11-9(7)(C). In fact, there are compelling reasons why the section must be so construed. The legislative purpose in including the antiretaliation provision was obviously to encourage people to come forward and expose unlawful employment practices and to do so without fear of reprisal. By protecting reasonable, good faith opposition, the provision also advances the statutory purpose of ending discrimination by engaging private citizens to help serve as "private attorneys general."

An absence of such protection would create a chilling effect on employees' willingness to join the fight. The overriding purposes of W. Va. Code, 5-11-9(7)(C), would be wholly defeated if its protection applied only to those individuals who confidently know the technical area of fair employment law and who correctly predict how its doctrine will ultimately be applied in a court of law. Given those unpredictable variables, few rational employees would take much solace in the protection from retaliation offered by such a narrow construction of W. Va. Code, 5-11-9(7)(C).

*Hanlon v. Chambers*, 195 W. Va. 99, 103, 464 S.E.2d 741, 745 (1995).

"Protected activity" under the West Virginia Human Rights Act
includes opposition to a practice that the plaintiff reasonably and in
good faith believes violates the provisions of the Act. This standard has
both an objective and a subjective element. The employee's opposition
must be reasonable in the sense that it must be based on a set of facts
and a legal theory that are plausible. Further, the view must be honestly
held and be more than a cover for troublemaking. Thus, even if there
was no actionable sexual harassment, the plaintiff could still have been
engaged in a protected activity if she complained about being sexually
harassed."

*Conrad v. Ara Szabo*, 198 W. Va. 362, 480 S.E.2d 801 (1996).

The opposition clause makes it unlawful for an employer to
discriminate against any employee because he has opposed any practice
made unlawful by 42 U.S.C.S. § 2000e-3. The term oppose, being left
undefined by the statute, carries its ordinary meaning, to resist or
antagonize; to contend against; to confront; resist; withstand. Although
those actions entail varying expenditures of energy, resist frequently
implies more active striving than oppose . . . Therefore, minimally, a
plaintiff may state a cognizable retaliation claim by alleging that she
expressed to her employer ostensible disapproval of sexually obnoxious
behavior.

As Crawford makes clear, an employee may oppose an unlawful
practice for Title VII of Civil Rights Act of 1964, 42 USCS § 2000e-3
purposes simply by expressing ostensible disapproval of it to her
employer in response to the employer's investigation.

*Hilton v. Shin*, Civil Action No. 11-cv-02241-AW, 2012 U.S. Dist. LEXIS
60204, at 1 (D. Md. Apr. 30, 2012).

The law is clear that when employees act to oppose conduct they believe to

be in violation of the WVHRA, that is protected activity. Resisting unlawful

practices under the WVHRA would use the same or a similar framework as resisting

11

unlawful practices under Title VII of the Civil Rights Act of 1964, as described above.

All of that said, there is no need for a long walk to determine whether the practice at issue in this matter was unlawful under the WVHRA. There is no close call about the conduct to which the Appellant was subjected violated the WVHRA. A patient was groping her breasts without her consent, and doing so repeatedly over her objection. Appellant told the Appellees what had happened, that she had swatted the patient's hands away from her body after multiple gropings. The Appellees asked her to write down what happened, submitted it to the state, then terminated her for it.

Appellees terminated Appellant for smacking the patient's hands away off her body during one of his multiple gropings of the Appellant. Appellant states that she swatted the patient's hands away to prevent him from continuing to grope her, and that he had already groped her breasts. She stated that the patient was attempting to grope her breasts and genitals at the time she swatted his hands away. JA122-124.[1]

---

[1] 18 And we sat and talked.· And he took hold of
19 my hand and squeezed it, and he said, you know, I've
20· got kids and grandkids, do you?· I said yes.· And we
21 talked about our family and all.· And then I said do
22 you need anything?· A drink of water.· I give him a
23 drink of water, and he touched my breasts then.
24 I said, "It's not polite to touch someone's
1  breasts or any part of a female body at any time." I
2 said, "You're married, you have a wife.· If you need
3 to touch someone's breasts, you should be touching

It is undisputed that suspension and termination are adverse employment actions. Accordingly, elements two and three of the retaliation test are satisfied. Furthermore, Appellees admit that they terminated the Appellant for smacking the patient's hands away, so the fourth element of retaliation is certainly satisfied. Unlike a normal retaliation claim, there is no question as to the motive of the Appellees; this is entirely a legal question hinging on the first element of the retaliation element test.

Accordingly, the only question before this Court is whether Appellant smacking the patient's hands away after he groped her breasts and vagina is protected activity. As set forth above, the record demonstrates that Appellant smacked the patient's hands away the patient had groped the Appellant multiple times during their first and only interaction. Here, Appellees do not even dispute Appellant's version of events, that she was groped multiple times by the patient. Unwanted groping of the breasts and vagina is a practice in violation of the

---

4 hers." . . .
10 A: After I told him it wasn't nice when I had
11 to keep moving my chair up, because I moved it back,
12 and then I moved it back up. And then he reached,
13 set up, like he was sitting up in bed, and I went to
14 push him back down because I was afraid he would try
15 to get out of bed. And he touched my breasts, he
16 touched my vaginal area . . .
·6 Q: All right.· So my question was:· At what
7 point did you smack his hands?
8 A  When he was touching my breasts and my
9 vagina area. Because I kept telling him: You don't
10 do that, it's not nice.
JA122-124, Deposition of Dorothy Bills pgs. 57-59.

13

WVHRA. Appellant smacking the patient's hands away is opposition to the practice. It is the type of active resistance described as protected activity in Title VII cases such as *Hilton v. Shin*. See *Hilton v. Shin,* 2012 U.S. Dist. LEXIS 60204. *Crawford v. Metro; Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 272, 129 S. Ct. 846, 849 (2009).

Appellees have relied entirely upon Appellant's version of events in her interactions with the patient, never disputing it. Indeed, they submitted Appellant's unaltered account of the incident to WVDHHR for evaluation as potential abuse. But when WVDHHR determined that the incident was not abuse, for some reason, Appellees ignored that finding. It is unclear why WVDHHR's finding that no abuse had occurred carries no weight with Appellees.

It is also odd that Appellees continue to compare Appellant's actions in this matter to illegal or unseemly violent acts. Appellees' brief displays an uncommon dedication to ignoring the existence of a letter from WVDHHR exonerating Appellant of any abuse allegations. Appellees note that "illegal actions are not protected activity," and states that "means of chosen opposition must be legal," but again, this contradicts WVDHHR's findings to the contrary. Appellee's brief also bears an entire heading stating that "Patient abuse is not protected conduct under the WVHRA," flying in the face of the fact that there was no finding of patient abuse; in fact, the state's investigation into that allegation exonerated Appellant.

Appellant's testimony was clear that after she prevented the patient from continuing to grope her, she carried out the rest of her duties to care for the patient without incident. It was also clear from her account that the patient was not injured, and this finding is corroborated by WVDHHR finding no wrongdoing on her part.

Additionally, Appellant's claim is under the West Virginia Human Rights Act, not Title VII. And under the West Virginia Human Rights Act, "[i]t is against West Virginia public policy for an employer to retaliate against any individual for expressing opposition to a practice that he or she reasonably and in good faith believes violates the provisions of the West Virginia Human Rights Act. W. Va. Code § 5-11-1 et seq. (Act). An alleged act of sexual harassment clearly qualifies as a practice that is in violation of the provisions of the Act. W. Va. Code § 5-11-9(7)(C)." *Kalany v. Campbell*, 220 W. Va. 50, 52, 640 S.E.2d 113, 115 (2006).

A comparable case to the instant one arose under the WVHRA in 1995, *Hanlon v. Chambers*. In *Hanlon*, a female supervisor complained about sexual harassment, and was terminated for it. One of the issues taken up in that matter was the question of whether some contribution to a harassment problem by a plaintiff somehow absolved the employer of responsibility for subjecting employees to a hostile work environment.

> We also affirmatively reject any suggestion that a supervisor who has been the object of sexual harassment has in some sense "allowed" it to happen. To say that she is a victim of sexual harassment states a legal

15

conclusion: she has been required to work in a hostile environment that has deprived her of reasonable working conditions on the basis of her sex. When an employer learns that such has taken place, his alternative under the Human Rights Act is to investigate and, if need be, root out the harassment; it is not to fire the victim. We refuse to apply the Human Rights Act in such a way as to make the victim the responsible party.

*Hanlon* 195 W. Va. at 114.

Setting aside the confusing dilemma of how Appellees can conclude Appellant's conduct was illegal violence when the entity they rely upon to make that determination concluded that it was not, there is also the sobering implication of what Appellees are suggesting. Appellees are suggesting that if one of their employees is sexually harassed or sexually assaulted by a patient, that the employee should submit to the patient's sexual advances or molestation lest they be terminated. Even if the employee is exonerated of abusing the patient, their conduct will still constitute a terminable offense at Worthington. This is a truly chilling thought, and one that the Court should not countenance.

Appellees have stated without deviation that the sole basis for their termination of the Appellant was that she smacked the patient's hands away from her breasts after he groped her multiple times in that same encounter. If the Court concludes, as it should, that to do this constitutes resisting sexual harassment, then Appellees' stated basis for her termination is for an act that constitutes resisting sexual harassment. The WVHRA forbids employers from terminating employees

who resist discriminatory acts that they believe to violate the WVHRA. No showing

of pretext is required to demonstrate that this would be a violation of the WVHRA.

> 6 2· · ·Q· · What did you report to Anita?
> · 3· · · ·A· · That he become sexually aggressive, he
> · 4· touched my breasts and tried to touch me in the
> · 5· vaginal area, and I smacked his hands, and he quit it
> · 6· after so long of a time. I said: Then Chelsea come
> · 7· back, we changed him, and I left and went to continue
> · 8· with my clients.

JA130, Deposition of Dorothy Bills, Page 65.

**IV. Conclusion**

Appellant clearly engaged in protected activity by smacking a patient's hand

away during his groping attack on her. Appellant continually rendered the

necessary care to the patient while attempting to verbally dissuade him from

groping her. When her verbal remonstrations failed, she physically removed the

patient's hand from her private areas. This was protected activity, and the state of

West Virginia concluded there was no patient abuse. Appellees state that they

terminated her for this action. Accordingly, the District Court erred in finding that

Appellant was not terminated for engaging in protected activity.

Appellant asks this Court to reverse the District Court's grant of Appellee's

Motion for Summary Judgment and remand the matter for further proceedings

consistent with that ruling.

Respectfully submitted,

DOROTHY BILLS,
Appellant by Counsel

<u>/s/ Walt Auvil</u>
WALT AUVIL (WVSB #190)
KIRK AUVIL (WVSB #12953)
ANTHONY BRUNICARDI
(WVSB #13593)

The Employment Law Center, PLLC
1208 Market Street
Parkersburg, WV 26101
(304) 485-3058
(304) 485-6344 (fax)