RECORD NO. 22-2274

---

In The United States Court of Appeals
For the Fourth Circuit

---

DOROTHY BILLS,
*Plaintiff-Appellant,*

v.

WVNH EMP, LLC, an Ohio Corporation;
LANETTE KUHNASH,
*Defendants-Appellees,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

_____

RESPONSE BRIEF OF APPELLEES
_____

Maria Greco Danaher
Ogletree, Deakins, Nash,
Smoak & Stewart, P.C.
One PPG Place, Suite 1900
Pittsburgh, PA 15222
(412) 394-3390
maria.danaher@ogletree.com

*Attorney for Appellees*
*WVNH EMP, LLC and*
*Lanette Kuhnash*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. _22-2274_        Caption: _Dorothy Bills v. WVNH EMP, LLC, et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_WVNH EMP, LLC_
(name of party/amicus)

_____

who is _Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?    ☑YES ☐NO
      If yes, identify all parent corporations, including all generations of parent corporations:

      Health Care Facilities Staffing, LLC


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _Maria Greco Danaher_____      Date: _12.28.2022_____

Counsel for: _WVNH EMP, LLC_____

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. _22-2274_          Caption: _Dorothy Bills v. WVNH EMP, LLC, et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Lanette Kuhnash_
(name of party/amicus)

_____

who is _Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                        ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: *Maria Greco Danaher*                     Date: 12.28.2022

Counsel for: WVNH EMP, LLC

Print to PDF for Filing

## Table of Contents

INTRODUCTION ............................................................................................... 1

STATEMENT OF THE ISSUES ...................................................................... 2

STATEMENT OF THE CASE .......................................................................... 2

    A. Procedural History ............................................................................ 2

    B. Factual Background ........................................................................... 3

        1. WVNH and its Policies .............................................................. 3

        2. Bills' Responsibilities as a CNA .............................................. 4

        3. Bills Treatment of John Doe ..................................................... 5

        4. Investigation and Termination ................................................. 6

        5. The District Court's Ruling ...................................................... 7

SUMMARY OF THE ARGUMENT ................................................................. 8

ARGUMENT ...................................................................................................... 9

    A. The District Court Grant of Summary Judgment Should
       be Affirmed ......................................................................................... 9

        1. Patient abuse is not protected conduct under the
           WVHRA ................................................................................... 10

CONCLUSION ................................................................................................. 14

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cooper v. Norfolk & W. Ry. Co*.,
   870 F. Supp. 1410 (S.D.W. Va. 1994).....................................................9

*Crawford v. Metro. Gov't of Nash. & Davidson Cty., Tenn*.,
   555 U.S. 271 (2009)...............................................................................10

*Hanlon v. Chambers*,
   195 W. Va. 99 (1995) .............................................................................10

*Hilton v. Yoon S. Shin*,
   No. 11-CV-02241-AW, 2012 WL 1552797 (D. Md. Apr. 30, 2012) ...............10

*Landry v. Leesville Rehab. Hosp., L.L.C*.,
   No. 21-30423, 2022 WL 358168 (5th Cir. Feb. 7, 2022)...................................11

*Laughlin v. Metro. Washington Airports Auth*.,
   149 F.3d 253 (4th Cir. 1998) ................................................................11

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)...............................................................................11

*Morley v. N.C. Dep't of Health & Human Servs./Broughton Hosp*.,
   No. 1:00CV250-C, 2002 WL 1796813 (W.D.N.C. Aug. 2, 2002),
   *aff'd sub nom. Morley v. N.C. Dep't of Human Res*., 53 F. App'x
   253 (4th Cir. 2002).................................................................................12

*Morris v. BellSouth Telecomms., Inc*.,
   302 F. Supp. 2d 515 (M.D.N.C. 2004) .................................................12

*Mozee v. Jeffboat, Inc*.,
   746 F.2d 365 (7th Cir. 1984) ................................................................11

*Peterson v. Northrop Grumman Sys. Corp*.,
   No. CV WMN-13-3812, 2015 WL 6783161 (D. Md. Nov. 5, 2015) ...............12

*Roberts v. Glenn Indus. Grp., Inc*.,
   998 F.3d 111 (4th Cir. 2021) ..................................................................9

*Rochon v. Exxon Corp.*,
203 F.3d 827 (1999)..........................................................................................12

*Wilson v. Arcelormittal Weirton, LLC*,
CA No. 5:19-CV-254, 2021 WL 612405 (N.D. W.Va. Jan. 14,
2021) ....................................................................................................................11

**Statutes**

West Virginia Human Rights Act (WVHRA) ...................................................*passim*

# INTRODUCTION

The Parties agree Ms. Bills' appeal hinges on a single, simple issue – whether hitting a nursing home resident as a disciplinary measure is protected activity under the West Virginia Human Rights Act. It is not. The majority of the facts in this case are not in dispute. Particularly, it is undisputed that:

- Ms. Bills, a former Certified Nursing Assistant, was discharged for hitting a Worthington Healthcare Center resident with null mental capacity multiple times.

- Ms. Bills admits she did so to scold and reprimand the resident for inappropriate touching "like you would a child for misbehaving."

- This conduct violated WVNH EMP, LLC's ("WVNH") strict policy against resident abuse and the physical discipline of residents, which specifically includes the "slapping of hands."

Despite this, Ms. Bills now contends hitting the resident was protected opposition to sexual harassment under the West Virginia Human Rights Act, and that her discharge was unlawful retaliation for that hitting. That claim is dangerous and without merit.

The law makes clear that unlawful conduct, including threats or acts of violence, is never considered protected activity. The District Court agreed, clearly and specifically finding that "smacking a patient's hands and scolding him in response to inappropriate touching is not a protected activity." Ms. Bills cites no cases to the contrary and her repeated, conclusory insistence does not make it so.

Because Ms. Bills did not engage in protected activity, she cannot establish a retaliation claim under the WVHRA. The dismissal of Ms. Bills' claim thus should be affirmed.

## STATEMENT OF THE ISSUES

As Appellant aptly states, the issue to be considered is: "Did the District Court err by finding that [Ms. Bills] smacking a patient's hands…is not protected activity?" Appellant's Br., p. 4. The answer is "No."

## STATEMENT OF THE CASE

### A.    Procedural History

Ms. Bills filed a lawsuit against WVNH on December 15, 2021 asserting a claim of wrongful discharge under the West Virginia Human Rights Act ("WVHRA"). On September 30, 2022, WVNH moved for summary judgment on Ms. Bills' claim. In that Motion, WVNH explained Ms. Bills was fired for violating its policy on resident abuse, which specifically prohibits correcting residents by hitting them. On December 1, 2022, the District Court granted WVNH's Motion for Summary Judgment in its entirety and dismissed Ms. Bills' case. Ms. Bills subsequently initiated this appeal.

**B.    Factual Background[1]**

1.    <u>WVNH and its Policies</u>

Appellee WVNH operates the Worthington Healthcare Center in Worthington, West Virginia ("Worthington"). (JA205). Ms. Bills began working for WVNH at its Worthington facility ("Worthington") as a Certified Nursing Assistant (CNA) in October 2018. (JA205). At the times relevant to Ms. Bills' claims, Appellee Kuhnash was the Director of Nursing ("DON") at Worthington. (JA205). Ms. Kuhnash has held that position since April of 2019. (JA205). Ms. Kuhnash's duties as DON include assuring that CNAs comply with Worthington's policies and procedures. (JA205). Importantly, Ms. Bills signed an Acknowledgement and Certification of Compliance with those policies. (JA205).

Worthington has a policy against sexual harassment that includes language regarding specific avenues for reporting harassment. (JA206). Worthington also has a policy against physical abuse of a resident/patient (hereinafter "resident"). (JA206). Worthington's policy against resident abuse specifically prohibits corporal punishment of residents. (JA206). For purposes of that policy, "corporal punishment" means physical punishment which is used as a "means to correct or

---

[1] The material facts in this brief are supported by Appellees' Concise Statement of Material Facts filed with the District Court in support of Summary Judgment. *See* Joint Appendix, pp. JA205-210. <u>Ms. Bills did not object or otherwise respond to Appellees' Concise Statement of Facts.</u> Therefore, all facts set forth in that document (and in this brief) are literally undisputed.

control the behavior" of a resident, and specifically includes "pinching, spanking, *slapping of hands*, flicking, or hitting with an object [italics added]." (JA206). Employees receive abuse prevention training as part of their orientation, and periodically thereafter. (JA206). Further, care facilities in West Virginia are required to report possible abuse or neglect of residents to West Virginia Department of Health and Human Services ("DHHR"). (JA208). Failure to report may result in citation against the facility. (JA208).

2.    Bills' Responsibilities as a CNA

On October 12, 2018, Ms. Bills signed a copy of the Position Description for CNAs. (JA206). The job description spells out the job responsibilities and requirements for a CNA. (JA206). CNAs are required, *intra alia*, to "Ensure that all resident care is provided in a dignified and respectful manner." (JA206). At Worthington and other nursing homes, employees routinely care for residents who may have "behaviors" resulting from health and mental health deficits. (JA206). Behaviors can take the form of acting out physically, verbally, emotionally or sexually. (JA206). Often the behaviors are involuntary. (JA206). Accordingly, CNAs must have the "[a]bility to relate to and work with the ill, disabled, elderly, emotionally upset, and, at times, hostile residents . . . ." (JA206). Further, CNA's are trained on techniques to manage resident behaviors. (JA206).

4

3.    Bills' Treatment of John Doe.

On July 17-18, 2019, Ms. Bills was assigned to assist in caring for a resident (hereinafter, "John Doe"). (JA206). The resident was at the facility for only a few days and died shortly thereafter. (JA207). John Doe had "null" mental capacity, meaning that he was unable to control his actions or understand their effect. (JA207). Ms. Bills had assisted in caring for John Doe on "one or two" prior occasions, without incident. (JA207). During those occasions, John Doe did not take any action that Ms. Bills "didn't like." (JA207).

Ms. Bills worked the Night Shift on July 17-18, 2019, which began at 10:00 p.m. on July 17 and ended at 6:00 a.m. on July 18. (JA207). On July 18, 2019, the resident allegedly touched Ms. Bills in what she described as a "sexually aggressive" way that she "didn't like" while she provided care. (JA207). In response, Ms. Bills "smacked" his hands. (JA207). Ms. Bills then smacked the resident again during a subsequent care attempt during the same shift. (JA207). While smacking the resident, Ms. Bills told him "You don't do that, it's not nice." (JA207). Ms. Bills characterized her own behavior as reprimanding John Doe "just like you would a child for misbehaving." (JA207). Another nurse who was in the room at the time of the smacking told Ms. Bills that her actions were abuse. (JA207). Ms. Bills disagreed and said that "There's a big difference between touching someone, smacking their hands, and actually hitting and abusing someone." (JA207). Upon leaving Doe's

5

room, Ms. Bills admitted to a Nurse Manager that she smacked Doe's hands, and was told she should write up that incident. (JA207). In addition, a night nurse instructed Ms. Bills to report her actions to DON Kuhnash.[2] (JA207).

### 4.     Investigation and Termination

After the incidents on July 18, 2019, Ms. Bills provided her statement to DON Kuhnash. (JA208). The report is a one paragraph handwritten statement of the events, written and signed by Ms. Bills. (JA208). The report specifically states that Ms. Bills "smacked" the resident more than one time. (JA208). Smacking a resident's hands as a disciplinary measure – which is how Ms. Bills characterized her own actions - specifically violates the facility's policy against resident abuse. (JA208).

Based on the content of Ms. Bills' written report and on the self-reported violation of WVNH's abuse policy, Ms. Kuhnash sent Ms. Bills' report to a social worker, Misty Boggs, to open an investigation. (JA208). Ms. Kuhnash also spoke directly to Ms. Bills on July 18, 2019 about the incident and documented that conversation in handwritten notes. (JA208). Ms. Kuhnash's notes indicate that Ms.

---

[2] Notably, Ms. Bills did not voluntarily inform Appellees about the incidents of which she now complains, as was required by WVNH policies if she believed that the patient's behavior constituted sexual harassment. Instead, Ms. Bills waited until she was instructed by at least two nurses to report it pursuant to the Company's policy against patient abuse, and she did so only after those instructions.

6

Bills again said that she "smacked" the resident but that she "didn't leave any marks." (JA208). Ms. Kuhnash then suspended Ms. Bills' employment. (JA208).

On July 22, 2019, after concluding the investigation, WVNH reported the incident to DHHR as required.[3] (JA208). The facility also terminated Ms. Bills for violating its policy regarding resident abuse. (JA209). Ms. Bills was informed of her termination by Worthington's Human Resources Manager, Kim Wiseman, in person "not terribly long after" the July 18 incident. (JA208-209). Ms. Wiseman entered Ms. Bills' employment termination into Worthington's computer system on August 1, 2019. (JA209). Ms. Bills admits that other than a single social visit to former coworkers in March of 2020, she made no efforts to inquire about her job. (JA209).

5.    The District Court's Ruling

On December 1, 2022, the District Court granted WVNH's Motion for Summary Judgment. In so doing, the District Court declined to determine whether John Doe's actions constituted workplace sexual harassment, what obligation Worthington had to protect employees from such harassment, or the impact of the

---

[3] Ms. Bills makes much of the fact that she was "exonerated" by DHHR. As an initial matter, a review of the record reveals this to be a misstatement - no actual determination was made by the DHHR. Further, contrary to Ms. Bills' assertion, Appellees do not "rely" on DHHR to determine whether an action is resident abuse under its policy. Further, WVNH is required to report any potential abuse to DHHR. Ms. Bills' argument that WVNH was somehow beholden to the findings of DHHR is unsupported by any record evidence, and it is not clear why Ms. Bills believes it. More importantly, the Parties agree Ms. Bills was fired for hitting a patient, an act that violated WVNH's policy against corporal punishment and patient abuse.

DHHR investigation or of Bills' decision not to renew her CNA license. Instead, the

court stated:

> The parties agree that Ms. Bills was terminated for smacking a patient's hands. Smacking a patient's hands and scolding him in response to inappropriate touching is not protected activity in opposition to an unlawful workplace practice. Therefore, Ms. Bills cannot present evidence that would permit a reasonable jury to find that she was discharged in retaliation for engaging in protected activity under the WVHRA. The Defendants are, therefore, entitled to summary judgment.

(JA328).

## SUMMARY OF THE ARGUMENT

The District Court correctly granted Appellees' Motion for Summary

Judgment and found smacking and scolding a resident for his conduct is not

protected activity in opposition to unlawful workplace conduct under the WVHRA.

In her Appeal Brief, Ms. Bills repeats her argument that hitting a mentally deficient

resident to reprimand him is protected opposition to sexual harassment. However,

she cites no cases supporting that position. Instead, she relies on cases which find

complaining of sexual harassment is protected activity. We agree. Had Ms. Bills

merely complained of sexual harassment, that conduct would arguably be considered

protected activity. Instead, she admits she hit a resident. Because Ms. Bills cannot

show she engaged in protected activity, she cannot establish an unlawful retaliation

claim under the WVHRA and the District Court's decision should be affirmed.

# **ARGUMENT**

**A.    The District Court Grant of Summary Judgment Should be Affirmed.**

Ms. Bills alleged a single claim in this action: retaliation under the WVHRA. Specifically, she claims that in discharging her for hitting a resident, WVNH and Ms. Kuhnash retaliated against her for "resisting sexual harassment." As the District Court recognized, this claim is wholly unsupported by the law. The District Court's grant of summary judgment and dismissal of Ms. Bills' case therefore should be affirmed.

To prove a claim of retaliation, Ms. Bills must proffer sufficient evidence to prove: 1) she engaged in protected activity; 2) the employer knew of the protected activity and subsequently took adverse employment action against Plaintiff; and 3) a causal relationship between the protected activity and adverse employment action. *Cooper v. Norfolk & W. Ry. Co*., 870 F. Supp. 1410, 1418 (S.D.W. Va. 1994); *see also Roberts v. Glenn Indus. Grp., Inc*., 998 F.3d 111, 122 (4th Cir. 2021). The District Court correctly found Ms. Bills failed to proffer evidence of protected activity, and thus could not establish a *prima facie* case of retaliation.[4]

---

[4] Because Ms. Bills could not meet the very first requirement of her *prima facie* case, the District Court declined to continue its analysis beyond that point.

9

1.    Patient abuse is not protected conduct under the WVHRA.

Ms. Bills alleges she was retaliated against for "her actions in resisting sexual harassment." JA012 ¶45, JA014 ¶60; *see generally* Appellant Br. Yet, Ms. Bills specifically admits that her "resisting" consisted of hitting a patient/resident with "null" mental capacity multiple times when he allegedly touched her body in what she termed a "sexually aggressive" way while she was providing care to him. Under Worthington's policies, slapping a patient in a disciplinary manner is specifically referred to as a form of resident abuse. Because resident abuse is not a protected activity under the WVHRA, Ms. Bills' retaliation claim fails as a matter of law.

Ms. Bills cites several cases which state that complaining of unlawful harassment or discrimination is protected activity.[5] Notably absent, however, are any cases finding that hitting or smacking is ever protected activity.[6] Ms. Bills does not allege she was fired for complaining of harassment. She agrees she was fired for

---

[5] *See Hilton v. Yoon S. Shin*, No. 11-CV-02241-AW, 2012 WL 1552797, at *4 (D. Md. Apr. 30, 2012) (declining sexual advances was protected activity; plaintiff did not hit alleged harasser); *Crawford v. Metro. Gov't of Nash. & Davidson Cty., Tenn.*, 555 U.S. 271, 276 (2009) (participating in sexual harassment investigation was protected activity; plaintiff did not hit alleged harasser); *Hanlon v. Chambers*, 195 W. Va. 99, 114 (1995). (complaining of harassment was protected activity; plaintiff did not hit alleged harasser).

[6] Appellees note that the *Hanlon* court's reference to an employee's "willingness to join the fight" against unlawful activity cited by Ms. Bills is quite clearly not meant to refer to literal assault. *See* Appellant's Br., p. 10, citing *Hanlon*, 195 W. Va. at 103.

10

hitting a resident with null brain capacity. Ms. Bills now asks this Court to agree that assault is a permissible response to harassment and/or discrimination.[7] The law states clearly that it is not.

Not all oppositional conduct constitutes "protected activity" under the law. It is well established that where an employee's actions interfere with their job performance or include unlawful activities such as acts or threats of violence, those actions will not be protected. *See, e.g., Laughlin v. Metro. Washington Airports Auth*., 149 F.3d 253, 259 n. 3 (4th Cir. 1998) ("It is black letter law that illegal actions are not protected activity under Title VII… Title VII simply does not condone illegal activity, even in furtherance of its laudable goals of preventing workplace discrimination"); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) (means of chosen opposition must be legal); *Mozee v. Jeffboat, Inc*., 746 F.2d 365, 374 (7th Cir. 1984) (stating employees may not engage in hostile, disruptive, or damaging conduct and then claim the shield of protected conduct, and noting only lawful activity is protected under Title VII) (emphasis added); *Wilson v. Arcelormittal Weirton, LLC*, CA No. 5:19-CV-254, 2021 WL 612405 at *2 (N.D. W.Va. Jan. 14, 2021) (applying Title VII framework to WVHRA claim); *see also Landry v.*

---

[7] This argument is particularly concerning in a care facility setting for mentally impaired individuals, where residents may lack control over their actions and offensive conduct is thus not abnormal. Ms. Bills essentially asks this Court to find, as a blanket rule and matter of first impression, that it is acceptable for nurses to correct mentally deficient nursing home residents by hitting them. That is abuse.

11

*Leesville Rehab. Hosp., L.L.C.*, No. 21-30423, 2022 WL 358168, at *6 (5th Cir. Feb. 7, 2022) (no retaliation where it was not reasonable for nurse to believe patient's behavior was sexual harassment, particularly where "the offensive conduct came from a nursing home patient where such patient behavior may not be considered unusual"). In short, Ms. Bills cannot hit a resident and shield herself from the consequences by calling it protected opposition.

Ms. Bills specifically admits to engaging in acts of violence against a resident that violated Worthington policy. Courts repeatedly have recognized the common sense notion that involvement in patient abuse is a legitimate, nondiscriminatory reason for discharge. *See Morley v. N.C. Dep't of Health & Human Servs./Broughton Hosp.*, No. 1:00CV250-C, 2002 WL 1796813, at *4 (W.D.N.C. Aug. 2, 2002), *aff'd sub nom. Morley v. N.C. Dep't of Human Res.*, 53 F. App'x 253 (4th Cir. 2002) (state hospital's termination of staff psychologist for involvement with patient abuse was not pretext for retaliation); *Peterson v. Northrop Grumman Sys. Corp.*, No. CV WMN-13-3812, 2015 WL 6783161, at *4 (D. Md. Nov. 5, 2015) (termination for violation of workplace violence policy was not pretext for retaliation); *Morris v. BellSouth Telecomms., Inc.*, 302 F. Supp. 2d 515 (M.D.N.C. 2004) (discharge for workplace violence policy was not pretext where plaintiff admitted to making comments that could be perceived as threat); *Rochon v. Exxon Corp.*, 203 F.3d 827

12

(1999) ("[v]iolation of a work-rule is a legitimate, nondiscriminatory reason for termination").

As a CNA, Ms. Bills was required to treat all residents, including "hostile" residents and those with "behaviors" due to mental health deficits, in a respectful manner. Far from ever being required to "submit" to harassment as Ms. Bills so outrageously suggests, Ms. Bills was specifically trained on techniques to manage such behaviors without resorting to physical punishment. Ms. Bills was also subject to Worthington's policy against resident abuse, which prohibits corporal punishment of residents and specifically precludes the "slapping of hands." Ms. Bills' repeated slapping of John Doe's hands was a clear policy violation and a failure to perform her duties as a CNA appropriately. The fact that Ms. Bills was instructed by multiple individuals to report the "abuse" at the end of her shift indicates that others viewed her actions as inappropriate, as well. Because Ms. Bills' actions violated the responsibilities of her job and involved physical violence, they are not protected, and Ms. Bills cannot establish a *prima facie* case of retaliation under the WVHRA. Therefore, the district court's decision should be affirmed.

55598219.v1-OGLETREE

## <u>CONCLUSION</u>

For the foregoing reasons, WVNH respectfully requests that this Court affirm the district court's grant of summary judgment and dismissal of Bills' Complaint, with prejudice, in its entirety.

                                  Respectfully submitted,

                                  */s/ Maria Greco Danaher*
                                  Maria Greco Danaher, Esq.
                                  Ogletree, Deakins P.C.
Dated:  March 23, 2023            One PPG Place, Suite 1900
                                  Pittsburgh, PA 15222
                                  Ph.:  412-394-3390
                                  maria.danaher@ogletree.com

                                  *Attorney for Appellees*
                                  *WVNH EMP, LLC and*
                                  *Lanette Kuhnash*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. __22-2274__      **Caption:** __Dorothy Bills v. WVNH EMP, LLC, Lanette Kuhnash__

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

---

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

---

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

---

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

---

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✔] this brief or other document contains _____3071_____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✔] this brief or other document has been prepared in a proportionally spaced typeface using
WORD _____ [*identify word processing program*] in
14pt Times New Roman _____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) /s/Maria Greco Danaher

Party Name WVNH EMP, LLC, Lanette Kuhnas

Dated: 03/23/2023